

**FILED**
JUL 19 2018
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

McGREGOR W. SCOTT
United States Attorney
MICHAEL G. TIERNEY
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SCOTT RADTKE<br><br>Defendant. | CASE NO. 1:18CR-00162 LJO SKO<br><br>VIOLATIONS: 18 U.S.C. § U.S.C. § 1344 – BANK FRAUD (SEVEN COUNTS); § 18 U.S.C. § 1028A – AGGRAVATED IDENTITY THEFT (TWO COUNTS); 18 U.S.C. § 982(A)(2), 1028(B)(5) – CRIMINAL FORFEITURE |

## I N D I C T M E N T

<u>COUNT ONE-SEVEN</u>:           [18 U.S.C. § 1344 – Bank Fraud]

The Grand Jury charges:

SCOTT RADTKE

defendant herein, as follows:

**A.    INTRODUCTION**

At all times relevant to this indictment:

1.    Defendant Scott Radtke was a resident of Clovis, California. Radtke operated a business known as "California Motoring Company" (CMC) that sold automobiles.

2.    CMC was located at 1063 Brookhaven Drive, Clovis, California, within the State and

Indictment                              1

Eastern District of California.

3. Bank of America, Capital One, and Murphy Bank were each financial institutions as defined by 18 U.S.C. § 20(1) whose deposits were insured by the Federal Deposit Insurance Corporation (FDIC).

4. Greater Valley Credit Union (GVCU) and Pentagon Federal Credit Union (PFCU) were financial institutions as defined by 18 U.S.C. § 20(2) because their deposits were insured by the National Credit Union Share Insurance Fund.

**B.    THE SCHEME TO DEFRAUD AND TO DEFRAUD BY FALSE PROMISES**

5. Beginning on a date unknown to the Grand Jury, but not later than in or about January 1, 2016, and continuing to and including at least June 2017, in the State and Eastern District of California and elsewhere, defendant Radtke knowingly executed, and attempted to execute, a scheme to defraud financial institutions as to material matters, and to obtain moneys, funds, assets, and other properties under the custody and control of financial institutions, by means of materially false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

**C.    MANNER, MEANS, AND ACTS OF THE SCHEME**

Defendant "Sells" a Car to a Customer That the Defendant Does Not Own

6. Defendant began by convincing CMC customers to purchase a vehicle. Frequently, CMC did not actually own the vehicle in question.

7. In such cases, the defendant would act as a broker. Brokering is an arrangement in which an automobile dealer agrees to provide a customer with assistance in purchasing a vehicle that the dealer does not own, in return for a fee and is authorized by California law.

8. Defendant then negotiated to receive money up front from the customers. For example, the defendant accepted cashier's checks and personal checks made out to himself or CMC and drawn on financial institutions used by the customers. At other times, customers obtained loans from financial institutions and provided the money to the defendant and CMC. The defendant indicated to the customers and financial institutions that these up-front payments would be used to pay for the vehicles

the customers were buying.

9. The defendant's representations were false and fraudulent. The defendant did not intend for the up-front funds to be used to purchase the vehicles. Instead, the defendant immediately deposited the payments or caused the payments to be deposited in accounts under his and CMC's control and used them and directed their use to pay for business and personal expenses.

10. In order to conceal these fraudulent activities from the customers and the financial institutions and further the scheme to defraud, the defendant solicited other automobile dealers throughout California to find the vehicles his customers had purchased or used vehicles in his inventory that had previously been sold. When he obtained the vehicles from other dealerships, the defendant told the dealers that he wished to broker a sale. The defendant did not pass along the up-front money his customers had paid him and CMC. Instead, he represented that the payment would arrive later.

11. The defendant then signed the customers' names to sales contracts, title transfers, and other documents generated by the other dealerships in connection with the sales—sometimes with the permission of the customers, and sometimes without permission. Based on these documents, the other dealerships believed they had valid sales contracts with the customers and allowed the defendant to take the vehicles.

12. In order to obtain vehicles as part of the scheme to defraud, the defendant completed false and fraudulent loan applications, and false and fraudulent sale documents authorizing dealerships to complete loan applications, and caused the loan applications to be submitted to financial institutions on behalf of the customer, even though the customers had not authorized the defendant to obtain a loan. In these applications and contracts authorizing applications, frequently the defendant fraudulently signed the loan documents and other documentation in the name of the customer/borrower, without the borrower's knowledge or authorization.

<u>The Defendant Presents the Stolen Vehicles to the Customers and the Scheme Breaks Down</u>

13. Once the defendant had convinced the other dealership to give him the vehicles, the defendant then presented them to the customers, thereby deceiving them into believing that their sales were valid and complete and that the money from their financial institutions had been applied to the purchase price, as the defendant had falsely promised them as part of the scheme to defraud.

14. The other dealerships soon began warning the customers that the dealerships had not received any payment for the vehicles and threatened to repossess them. The customers believed that they had already paid for their vehicles since they had given up-front money to the defendant. Both the customers and the other dealerships began asking the defendant and CMC about payment.

15. In furtherance of the scheme, the defendant made additional false and misleading statements and partial payments, and caused CMC to make additional false and misleading statements and partial payments, to the customers and other dealerships. Typically, these consisted of promises to pay, check payments that the defendant stopped or knowingly drew on accounts that had insufficient funds, or false explanations that a paperwork error or administrative error by a financial institution was responsible for the non-payment.

16. The following are examples of defendant's conduct in furtherance of his scheme to defraud:

M.F. and J.F.'s Purchase of a 2017 Lexus RX350

17. In March 2017, M.F. and J.F. approached the defendant about purchasing a 2017 Lexus RX350. On or about March 27, 2017, J.F. wrote the defendant a personal check drawn on their account at Bank of America as part of the purchase price for the Lexus. J.F. wrote the check based on the defendant's representation that the money would be used to purchase the Lexus. M.F. and J.F. also provided their existing vehicle to the defendant and CMC as a trade-in. The defendant's representation was false and was part of the scheme to defraud.

18. In furtherance of the scheme, the defendant thereafter communicated with a dealership in Beverly Hills to broker a Lexus RX350. That dealership required proof of financing, so the defendant called M.F. and J.F. on April 6, 2017 and stated that he needed M.F.'s Social Security Number in order to pick up their Lexus. M.F. provided it to the defendant. The defendant used the Social Security Number to create a false and fraudulent loan application in the name of M.F. to Capital One Auto Finance, a division of Capital One, and presented it, and other falsified sales documents, to the Beverly Hills dealership, intending that the Beverly Hills dealership would provide them to Capital One. The Beverly Hills dealership released the Lexus to the defendant, who provided it to M.F. and J.F.

19. In May 2017, M.F. received a statement from Capital One indicating that he owed over

$50,000 for an auto loan for the Lexus—even though M.F. had previously paid the defendant in full for the vehicle and had neither applied for a loan nor authorized the defendant to apply for one. In early June 2017, the defendant called M.F. and stated that he had sent a check to Capital One to cover the loan amount. In fact, the defendant had written and sent such a check to Capital One but later stopped payment on the check.

R.V. and C V.'s Purchase of a 2017 Acura MDX

20. As part of the scheme to defraud, in February 2017, C.V. agreed with the defendant on the purchase of a 2017 Acura MDX. At the defendant's suggestion that she obtain financing from GVCU for the purchase price, C.V. and her husband R.V. obtained a loan from GVCU and paid that amount to CMC based on the defendant's false representation that it would be used to purchase the Acura. Without C.V. or R.V.'s knowledge, the defendant on or about February 6, 2017 completed false and fraudulent sale documents using C.V. and R.V.'s names and signatures, which purported to authorize another dealership to submit a credit application in C.V. and R.V.'s names. The defendant's false and fraudulent representations in these sale documents caused the dealership to make a credit application to Bank of America in the names of C.V. and R.V. This credit application was itself false and was a part of the defendant's scheme to defraud because C.V. and R.V. did not want to have any person apply on their behalf for additional loans and had not authorized any such application.

21. The defendant's fraud scheme involved at least 48 vehicles and resulted in lenders, dealerships, and customers providing the defendant over $2,000,000 in funds and goods based on the defendant's false and fraudulent pretenses, representations, and promises

D. **TRANSACTIONS**

22. On and about the dates listed below, within the State and Eastern District of California, for the purpose of executing and attempting to execute the material scheme and artifice to defraud as set forth above, the defendant caused the commission of the following acts:

| Count | Approx. Date | Financial Institution | Transaction |
|---|---|---|---|
| ONE | 4/6/17 | Capital One | Auto loan of $53,993.71 made by Capital One to M.F. for the purchase of a Lexus RX350 |
| TWO | 1/24/17 | Murphy Bank | Auto loan of $28,022 made by Murphy Bank to J.T. for the purchase of a Ford F-350 |

Indictment 5

| | | | |
|---|---|---|---|
| THREE | 2/15/17 | GVCU | Auto loan of $28,022 made by GVCU to J.T. for the purchase of a Ford F-350. |
| FOUR | 2/8/17 | GVCU | Auto loan of $49,399 made by GVCU to R.V. and C.V. for the purchase of an Acura RDX. |
| FIVE | 2/6/17 | Bank of America | Auto loan of $50,975 made by Bank of America to R.V. and C.V. for the purchase of an Acura RDX. |
| SIX | 4/4/17 | PFCU | Auto loan of $35,675 made by PFCU to M.B. for the purchase of a Chevrolet Tahoe. |
| SEVEN | 4/3/17 | Bank of America | Auto loan of $47,578 made by Bank of America to M.B. for the purchase of a Chevrolet Tahoe. |

All in violation of Title 18, United States Code, Section 1344.

COUNTS EIGHT through NINE:        [18 U.S.C. § 1028A Aggravated Identity Theft]

The Grand Jury further charges:

SCOTT RADTKE

Defendant herein, as follows:

23.   Paragraphs 1 through 22 inclusive are incorporated by reference as if fully set forth herein.

24.   On or about the dates listed below, in the State and Eastern District of California and elsewhere, defendant Scott Radtke knowingly transferred, possessed, and used, without lawful authority, means of identification of other actual persons, including but not limited to the names, government-issued identification numbers, telecommunication identifying information, and access devices of such persons, during and in relation to unlawful activities that constitute felony violations of 18 U.S.C. § 1344, Bank Fraud, which is found in Chapter 63 of Title 18 of the United States Code. Specifically, as detailed below, defendant used the means of identification of the persons listed below, whose identities are known to the grand jury, in executing the scheme and artifice to defraud banks by means of materially false and fraudulent pretenses, representations, and promises.

| Count | Approx. Dates | Identities Used | Related Felony Violation |
|---|---|---|---|
| EIGHT | 4/6/17 | M.F. | COUNT ONE |
| NINE | 2/6/17 | R.V., C.V. | COUNT FIVE |

FORFEITURE ALLEGATION:   [18 U.S.C. § 982(a)(2), 1028(b)(5)]

1.   Upon conviction of one or more of the offenses alleged in Counts One through Nine of this Indictment, defendant SCOTT RADTKE shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2), any property constituting, or derived from, proceeds obtained directly or indirectly, as a result of said violations, including but not limited to the following:

    a.   A sum of money equal to the amount of proceeds obtained directly or indirectly, as a result of such offenses, for which defendant is convicted.

2.   Upon conviction of one or more of the offenses alleged in Counts Eight through Nine of this Indictment, defendant SCOTT RADTKE shall forfeit to the United States, pursuant to 18 U.S.C. § 1028(b)(5), any property used or intended to be used to commit the offense.

3.   If any property subject to forfeiture as a result of the offenses alleged in Counts One through Seven of this Indictment, for which defendant is convicted:

    a.   cannot be located upon the exercise of due diligence;

    b.   has been transferred or sold to, or deposited with, a third party;

    c.   has been placed beyond the jurisdiction of the court;

    d.   has been substantially diminished in value; or

    e.   has been commingled with other property which cannot be divided without difficulty;

///
///
///
///

it is the intent of the United States, pursuant to 18 U.S.C. §§ 982(b)(1), 1028(g) incorporating 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendant, up to the value of the property subject to forfeiture.

A TRUE BILL.

/s/ Signature on file w/AUSA
_____
FOREPERSON

McGREGOR W. SCOTT
United States Attorney
By:

**KIRK E. SHERRIFF**
_____
KIRK E. SHERRIFF
Assistant U.S. Attorney
Chief, Fresno Office